**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
<u>**Case No.:  1:21-cv-24155-FAM**</u>

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY AND GEICO CASUALTY CO.,
　　　　　Plaintiffs
vs.

GILBERTO SECO, M.D.; ET. AL.
Defendants.
_____/

<u>**DEFENDANTS MABEL GUTIERREZ CONCEPCION, LMT and**</u>
<u>**PREMIUM MEDICAL CENTER'S MOTION TO DISMISS**</u>

**COMES NOW** Defendants, Mabel Gutierrez Concepcion, LMT, and Premium Medical

Center Corp., (collectively referred to herein as "Premium Medical"), by and through their

undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6),

and move this Honorable Court to dismiss Plaintiffs' Complaint, enter an Order requiring

the Plaintiffs to file an amended complaint consistent with the arguments herein, and/or

strike the Plaintiffs' claim for attorney's fees.

## I.   INTRODUCTION

The Plaintiffs have filed multiple claims for relief against twenty (20) separate Defendants.

Their complaint is over Eighty-Five (85) pages in length with over twelve hundred (1200)

pages of attachments.  Plaintiffs are in the business of selling auto insurance policies in

Florida.   When a claim is made on an insurance policy it sold, GEICO investigates,

evaluates, and negotiates the claims that injured policy holders submit. This lawsuit

involves numerous Personal  Injury Protection (PIP) claims which the Plaintiffs previously

1

negotiated and settled with accident victims and their medical providers over past several years. Without disturbing those settlements, the Plaintiffs are nowpursuing the health care providers (Defendants) who treated the accident victim policy holders, to recoup the money that GEICO previously paid on those settled claims.  Years after paying proper and valid claims, Plaintiffs bring this complaint which includes causes of actions for declaratory relief, violation of the Federal Rico Statute, Fraud, and Unjust Enrichment. GEICO's claims are predicated on the health care providers purported violations of various Florida regulatory and licensing statutes.  The complaint bases its entire position on legal leaps of logic and legal conclusions.  The Complaint lacks any plausible facts that connect Premium Medical to any improper conduct. There exists no evidentiary nexus nor causal relationship regarding the false claims alleged by the Plaintiffs and the services rendered by Premium Medical.

## II.    <u>GEICO'S "DIRECT SUPERVISION" POSITION IS A LEGAL CONCLUSION NOT SUPPORTED BY FACTS</u>

In the span of 85 pages plus 1,200+ pages of attachments, plaintiff's sole argument against these defendants is that they violated Florida's Health Care Clinic Act (Fla. Stat. 400.9935), because the Medical Director engaged by Premium Medical allegedly never legitimately conducted systematic reviews of Defendants' clinic billings, permitted the defendant clinic to misrepresent the identities of the treating provider, bill for illusory services, misrepresent the nature, extent, and results of patient examinations, and bill for physical therapy services that were performed by unsupervised therapists.  **(ECF 1 Par. 23).** The Health Care Clinic Act states that a Medical Director Accepts "legal responsibility for the activities of the

clinic by conducting "systematic reviews" of the clinic's billings.  However, it is important to note that nowhere in the Clinic Act does it state exactly how a clinic review is to be accomplished, nor does it specify what a medical Director is supposed to do when conducting a clinic review.  *Allstate Ins. Co. Vizcay, 826 F. 3d 1326, 1332 (11th Cir. 2016).* This leaves the implementation of the Statute to the Florida Agency for Health Care Administration (ACHA).

Throughout the Complaint, Plaintiffs fails to allege how these defendants violated the guidelines established by ACHA, or how the Medical Director failed to conduct his medical director responsibilities for Premium Medical under the AHCA guidelines.  In fact, the Florida Administrative Code does not even require Medical Directors to be physically present within the clinic for which they accept legal responsibility.  Under the Florida Administrative Code, a physician may serve as the Medical Director for up to five health care clinics at the same time. *(Fla. Admin. Code Ann. R. 59A-33.013.)*  Since the Administrative Code contemplates that physician may serve as the Medical Director for up to five clinics at the same time, and does not intend require the Medical Director's physical presence in each of the offices he/she is supervising while overseeing the treatments that are being provided.  The implementation of F.S. *400.9935* falls within the purview of AHCA, the State Agency that licenses, supervises, and inspects the respective Healthcare Clinics that operate in the State of Florida.

Throughout their complaint, the 'facts' used by the Plaintiffs are conclusionary and unsupported.  For example, in Paragraph 37 of the Complaint, the Plaintiffs alleged that the treating Physician, Dr. Seco, was the treating physician at several locations

simultaneously and that he could not possibly be present at all these locations, at the same time. **(See ECF. 1 PAR. 37)** However, as indicated above, a Medical Director can serve in that position for up to 5 clinics simultaneously, and it has never been alleged that these Defendants submitted medical bills in violation of the ACHA guidelines. A medical provider such as Defendant Premium Medical has no control over which clinics its Medical Director chooses to serve. No facts are included in the complaint which show how Defendant Premium Medical would be aware of when or where else Dr. Seco worked while employed and serving as Premium Medical's Medical Director.

Plaintiffs concede they were given medical r e c o r d s a n d notes during the claims process relative to each claim they received from the defendants, and that Plaintiffs' very own experts reviewed the medical records and notes and determined that they were sufficient for GEICO to pay the claims. Now, years later, GEICO is asking the Court to excuse their own lack of due diligence in investigating properly submitted PIP claims, and now they are crying fraud to obtain a refund despite never being misled about anything.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT

"The Declaratory Judgment Act is an enabling Act, which confers discretion on courts rather than an absolute right upon the litigant." *Otwell v. Ala. Power Co.*, 747 F. 3d 1275, 1281 (11th Cir. 2014) (citations omitted). The Eleventh Circuit has enunciated the elements for declaratory relief:

> [E]choing the "case or controversy" requirement of Article III, the Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy." *See Emory v. Peeler*, 756 F.

4

2d 1547, 1551-52 (11th Cir. 1985) (citing 28 U.S.C. § 2201); *see also Atlanta Gas Light*, 68 F. 3d at 414 ("In all cases arising under the Declaratory Judgment Act,...the threshold question is whether a justiciable controversy exists."). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F. 2d at 1552. The controversy between the parties cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id*. In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Grp.*, 193 F. 3d 1342, 1346 (11th Cir. 1999); *accord Strickland v. Alexander*, 772 F. 3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, ... the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'") (*quoting Malowney*, 193 F. 3d at 1346). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, ... [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney*, 193 F. 3d at 1347; *see also id*. at 1348 ("Injury in the past...does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."). Accordingly, if a plaintiff does not assert a reasonable expectation of future injury, he "lack[s] standing to bring an action for declaratory relief[.]" *See id*. at 1348.

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F. 3d 1205, 1210–11

(11th Cir. 2019).

GEICO has failed to allege any facts that would demonstrate a substantial

likelihood that GEICO will suffer an injury in the future. GEICO has two options with

respect to any pending claims. It can deny the claims under section 627.736(4)(b)(3),

Florida Statutes, or if they believe that the coding of the claim is improper or incorrect,

GEICO can assign what they believe would be the proper codes for the services

performed pursuant to section 627.736 5(b)(1)(e), and pay the re-coded claims.

In a diversity matter such as this one, a federal court must apply federal law if the disputed issue is procedural and must apply the law of the forum state if the matter is substantive. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Eleventh Circuit has approved the interpretation of Chapter 86 of the Florida Statutes – which provides state courts with authority to declare the rights, status, and other equitable legal relations between parties – as a procedural mechanism conferring subject matter jurisdiction on Florida statute courts, but not conferring any substantive rights. *Coccaro v. GEICO Gen. Ins. Co.*, 648 Fed. Appx. 876, 880-81 (11th Cir. 2016). "As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different." *Nirvana Condo. Ass'n v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008).

GEICO's Complaint does not seek the resolution of a bona fide dispute between the parties and does not establish that the Plaintiffs has an actual, present, or practical need for a declaration from this Court.  In addition, the declaratory judgment sought by Plaintiffs simply asks the Court to declare that GEICO is not required to pay the PIP claims submitted by these defendants.  For these reasons, the cause of action does not  satisfy  the requirements of the Declaratory Judgment Act (or Chapter 86 of the Florida Statutes) and does not provide standing for the Plaintiff to seek declaratory relief in this Court.

The Plaintiffs has not alleged sufficient standing to invoke the Court's jurisdiction to hear the alleged equitable dispute. Federal courts are courts of limited jurisdiction and are only entitled to hear disputes brought by those with proper standing. One requirement

of standing is that a plaintiff seeking declaratory relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Consistent with this standing requirement, a declaratory judgment entered pursuant to the Declaratory Judgment Act may only be issued in the case of an "actual controversy." *Id.* "[D]eclaratory relief is not generally available to settle coverage questions under an insurance contract that is clear and unambiguous, because such instances present no need for contract construction." *Horey v. USAA Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 68010, *2 (S.D. Fla. Apr. 16, 2020).

GEICO's Complaint does not allege sufficient facts which would demonstrate an actual controversy with respect to its rights and obligations under the various insurance policies, nor with Florida's no-fault statute.  Rather, it simply asks the Court to support its own internal decision to deny all PIP claims submitted by these defendants.   Instead of seeking the resolution of an actual controversy, the cause of action asserted by GEICO serves only as a means of obtaining the court's blessing approving GEICO's pre-suit decision to deny PIP claims submitted by these defendants.

While Plaintiffs asserts that it is uncertain as to its rights and that an actual controversy exists between the parties, the Complaint fails to allege any ultimate facts that would demonstrate to the Court that there is actually a bona fide need for declaratory relief.  Plaintiffs has not cited any actual loss relative to future or pending claims because GEICO already denied those claims and has admittedly paid nothing on those pending claims. Any claim regarding potential future loss would necessarily be speculative and thus not

ripe for determination in this lawsuit.

The Declaratory Judgment claim here should be dismissed for the same reasons articulated by the Court in *Arias-Bonello v. Progressive Select Ins. Co.*:

> The Court concludes that Plaintiff's declaratory judgment claim should be dismissed for two reasons. First, the Court agrees with Defendant that Plaintiff's claim for declaratory relief should be dismissed because Plaintiff and putative class members undoubtedly have "an adequate legal remedy [based on] damages for breach of contract."
> ...
> Second, while Defendant did not expressly raise the issue, the Court concludes that even if Plaintiff could state a plausible claim for declaratory relief, which she cannot, the Court would nonetheless decline to exercise jurisdiction over Plaintiff's declaratory judgment claim.

*Arias-Bonello v. Progressive Select Ins. Co.*, 0:17-CV-60897-UU, 2017 WL 7792704, at *3-4 (S.D. Fla. Aug. 8, 2017).

## IV.      LEGAL STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),the Court must accept as true all well-pled allegations in the complaint. *See Hill v. White, 321* F.3d 1334, 1335 (11th Cir. 2003). The Court must view the complaint in light most favorable to the plaintiff, see*, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). No such presumptive truthfulness attaches, however, to conclusory allegations or unwarranted deductions of fact. *See S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified that "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. However, to survive a motion to dismiss, a plaintiff's complaint must include "'enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). The complaint "must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; despite the highly deferential reading which [a court] accords a litigant's complaint under Rule 12(b)(6)." *Miranda v. Ponce Federal Bank*, 948 F.2d41 (1st Cir. 1991). In short, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do. *Twombly at 554-555 (2007)*. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."*Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*.  In other words, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003)*. The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v.Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009). All facts that plaintiffs have alleged against Premium Medical are conclusory and fail to meet the necessary threshold to state a

claim.

## V.  COUNTS 12 AND 13 MUST BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION COMPLIANT WITH THE FEDERAL CIVIL RICO STATUTE 18 U.S.C 1962.

To establish a Civil Racketeer Influenced and Corrupt Organization Act ("RICO") claim, a plaintiff must prove: (i) conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity; and (iv) injury to business or property "by reason of" the substantive RICO violation. *Williams v. Mohawk Indus., Inc.*, 465 F. 3d 1277, 1282-83 (11th Cir. 2006) (citing 18 U.S.C. §§ 1962(c), 1964(c). A plaintiff must establish a distinction between the defendant "person" and the "enterprise" itself. A racketeering enterprise and the defendant must be two separate entities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); *see also United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) ("We now agree with our sister circuits that, for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise.").

In the instant case, the Plaintiffs boldly allege that any medical bill that is submitted to GEICO which fails to comply with any singular technical billing requirement gives rise to a federal cause of action for civil RICO, and mail fraud.  GEICO literally seeks to make a federal case out of any billing dispute, despite the fact that the Florida PIP statute provides a remedy for all such billing disputes.  But that misses the point because GEICO's end-game is not to actually prove a RICO case (because there is no evidence to support such a claim), but to force small family run medical providers to capitulate under the immense

pressure and expense of a federal civil RICO claim, no matter how frivolous the claim may be.  GEICO's goal is to pressure these defendants and all other similarly situated medical providers into abandoning valid claims and to decline medical care for GEICO policy holders thereby shrinking the universe of medical providers willing to accept auto-accident patients with GEICO insurance.

Florida's PIP statute and the controlling case law provides that in order to be paid under the PIP coverage, the medical bills must be *substantially* compliant with the PIP statute's billing requirements.  Perfection is appreciated, but not mandated.  GEICO contends that any billing error gives rise to a RICO claim.  Since the birth of Florida's No-Fault Act, insurers have dealt with billing errors by simply rejecting the bills and insisting on a compliant bill.  GEICO claims that these defendants improperly coded the medical treatments they provided.  But, Florida's PIP statute has a remedy for that as well.  F.S. 627.736(5) provides that a PIP insurer is permitted to re-code any medical bill it believes was improperly up-coded, etc.   Florida's  PIP statute does not provide for a civil RICO-type remedy for an up-coded medical bill.  The remedy is to deny the bill or to down-code it.

If GEICO claims that a particular medical treatment or modality is not medically necessary, then the remedy, according to Florida's PIP statute is to deny the claim because PIP insurers are only required to pay medical bills that are reasonable, related to the accident and medically necessary.  See, F.S. 627.736(1).  Instead, GEICO claims it paid medical bills that it previously deemed medically necessary, then years later, after it remitted payment, GEICO now claims that the medical provider is guilty of civil RICO

and mail fraud for submitting a medical bill that Geico now decided years later was not medically necessary.  GEICO admittedly never even bothered to request additional medical records to confirm the relatedness or medical necessity of the medical bills it paid, despite the fact that Florida's PIP statute provides a mechanism for GEICO to request medical records to confirm the care provided was related to the accident and medically necessary, and GEICO is not even required to pay the bill until and unless it receives the medical records.  See, F.S. 627.736(6)(b).

If a defendant medical clinic listed the supervising doctor in Box 17 instead of Box 31 of the HCFA form (despite the fact that the written HCFA billing guidelines are unclear at best as to what information is required), then GEICO will use its financial superiority to pounce on the provider with another civil RICO claim.

Presumably, GEICO intends to target every hospital and urgent care facility for every billing error to the point that GEICO's PIP coverage becomes illusory because medical providers will refuse to accept patients with GEICO coverage for fear of being in GEICO's crosshairs, while GEICO continues to benefit financially from the Florida PIP statute which requires all drivers to purchase their products.

In its Complaint, GEICO uses generic terms to skirt the RICO pleading requirements.  GEICO sheepishly claims that "*in many cases*…" without actually identifying which individual cases involve these alleged wrongful acts, nor who the actors were, etc.

The Courts have clearly established that a racketeering enterprise requires two or more *entities* acting in concert.  The RICO claims, counts twelve and thirteen, incorporate

the 96 paragraphs that precede it, including all other individuals and provider defendants, such that these defendants are unable to ascertain who is being accused of what, who did what, who was in control over the insurance billing, who decided what treatment to render and who decided what to bill and how it was billed, what accompanied the bills, etc.

There exists absolutely no  evidentiary nexus, nor causal relationship regarding the false claims alleged by  Plaintiffs and the supervisory services rendered by Seco. The Complaint simply fails to establish a clear  separation between Gutierrez Concepcion and Premium Medical such that Plaintiffs fails to satisfy the elements or existence of a RICO Enterprise. Remarkably, although the allegation section of Plaintiff's complaint is over eighty-five (85) pages in length and over twelve hundred (1200) pages of attachments the Plaintiffs still fails to allege in any part of its complaint that Premium Medical agreed to participate in criminal conduct or had any involvement in the submission of the health care claims at issue.  While the lack of "distinctiveness" is fatal, Plaintiffs also fails to plead other crucial elements under 18 U.S.C. §1962(c) as well. For instance, Plaintiffs fails to plead facts that establish the organization or structure of the enterprise; there are no allegations that the authority over treatment plans and the resulting billing was at any time in the control of Gutierrez Concepcion. The complaint does not address what role Gutierrez Concepcion played within the enterprise, when she allegedly became involved in the enterprise, what conduct s he allegedly undertook within the enterprise, and/or what part s he  undertook,  if any, in directing the enterprise's affairs.  There are no specific facts detailing the allegation.

The Supreme Court, in *Boyle v. United States*, 556 U.S. 938, 941 2009), confirmed

that an alleged RICO enterprise must have some structure, holding that the structure of an enterprise consists of "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. The Supreme Court has also held that, in order to establish a RICO cause of action, a plaintiff must also allege that each of the defendants have "conducted or participated" in the enterprise's affairs, satisfying what is known as the "operation or management" test. To allege a Section 1962(d) claim, a plaintiff must allege "that the conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996).

An agreement to participate in a RICO conspiracy can be established either: (1) "showing an agreement of an overall objective" or (2) "in the absence of an agreement on an overall objective, by showing that a defendant agreed personally to commit two predicate acts." *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992). "Plaintiffs must allege that the conspirators agreed to participate in the affairs of an enterprise through a pattern of racketeering activity and must show sufficient conduct on the part of the participants that such an agreement can be inferred." *In re Managed Care Litig*., 298 F. Supp. 2d 1259, 1280-81 (S.D. Fla. 2003) (citations omitted). "The existence of an agreement to further illegal acts  are the key." *Id*. And, specific factual allegations must over two hundred (200) pages in length and over three thousand (3000) pages of attachments support the inference of an "agreement" to violate RICO. *Carter v. MGA, Inc.*, 189 Fed. Appx. 893, 895 (11th Cir. 2006). If a plaintiff does not allege any additional allegations in its count for RICO conspiracy, but instead relies on the same deficient facts

alleged for the RICO claims under § 1962(c), the RICO conspiracy claim must fail. *See Super Vision Intern., Inc. v. Mega Intern. Commercial Bank Co., Ltd.*, 534 F.Supp.2d 1326, 1342 (S.D. Fla. 2008)  (*citing* as articulated by the Eleventh Circuit, where the complaint fails to state a substantive RICO claim, a RICO conspiracy allegation "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation." (Citing *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1269 (11th Cir.2004).  In *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1380–81 (11th Cir.1997)*,* the 11th Circuit concluded that a complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud. "[I]n a case involving multiple defendants ... the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1381. GEICO's RICO allegations repeatedly lump all of the defendants together without offering specific allegations as to each.

Here, the allegations in the Plaintiff's complaint do not support an inference of an agreement to the overall objective of the conspiracy or an agreement to commit  two predicate acts on the part of Gutierrez Concepcion. In analyzing the conspiracy claim under the plausibility standard, *Iqbal* instructs the Court to eliminate any allegations in Plaintiff's complaint that are merely legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Accordingly, Plaintiff's allegations should be disregarded as they are precisely the type of "formulaic recitations" of a conspiracy claim, which the Supreme Court concluded

were insufficient. *See Id*. at 1950-51 (holding that Iqbal's bare allegation that defendants *Aschcroft* and *Mueller* agreed to adopt a discriminatory policy was not entitled to thepresumption of truth and should be ignored under *Twombly); See also, Bell Atlantic Corp. v.Twombly*, 550 U.S. 544, 557 (noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Based on the arguments set forth above, Plaintiff's RICO conspiracy claim must fail as the allegations that form the basis of the underlying RICO claim are insufficient as a matter of law.  Therefore, **Counts Twelve and Thirteen** should be dismissed.

## VI.  PLAINTIFF'S "SHOTGUN" PLEADINGS REQUIRE DISMISSAL OF THE CLAIMS FOR FLORIDA DECEPTIVE UNFAIR TRADE PRACTICES ACT (FDUTPA) (14); COMMON LAW FRAUD (15) AND UNJUST ENRICHMENT (16)

A Common law fraud allegation requires specific conduct by a defendant to be pled by the Plaintiffs in their complaint. GEICO fails to allege fraud with specificity in Counts Fourteen, Fifteen, and Sixteen against Premium Medical. Instead, Plaintiffs incorporate and re-alleges paragraphs 1-96.  In fact, not only do the Plaintiffs re-allege paragraphs 1-96, butthey also use the general term "Premium Medical Defendants." Rather than clearly identifying each defendant by name, the plaintiffs, in  each  of these separate causes of actions, have used a boiler plate description. The use of such a general term is a  textbook example of a shotgun pleading. Plaintiffs, in each of its counts, incorporates all the preceding allegations of the Complaint. Such a pleading is known as a "shotgun complaint." *See Ferrell v. Durbin*, 311Fed.Appx. 253, 259. (11th Cir. 2009) Such a

complaint is highly disfavored in the Eleventh Circuit. *See, Jovine v. Abbott Laboratories*, 795 F. Supp.2d 1331 (D.C. S.D. Fla. 2011) Indeed, such pleadings often are dismissed in their entirety with leave to amend. *Id*. The Eleventh Circuit "has had much to say about shotgun pleadings, none of which is favorable." *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 979 n. 54 (11th Cir.2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 9 (11th Cir.2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); Byrne v. Nezhat, 261 F.3d 1075, 1131 (11th Cir.2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); *Anderson v. D. Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir.1996) (quotation omitted) .... Consequently, the Court will dismiss Plaintiff's Amended Complaint, in its entirety, for this reason."). By incorporating the preceding 96 paragraphs into counts 14, 15, and 16, the Plaintiffs have improperly comingled multiple unrelated claims and unrelated Defendant's into these counts thereby conflating claims and issues. Also, in Count Fifteen Plaintiffs, allege that the "Premium Medical Defendants" intentionally and knowingly made "false and fraudulent statements of material fact" and "concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Premium Medical without the specificity required by Federal Rule of Civil Procedure  9(b) Federal Rule of Civil Procedure 9(b) states: "(a) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. Rule Civ. P. 9(b) ('Rule 9(b)')". The "particularity" requirement "…[s]erves an important purpose in fraud actions by alerting parties to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.' " *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (citation omitted). *See also Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985)(Rule 9(b) serves to "…[e]liminate fraud actions in which all the facts are learned through discovery after the complaint is filed"). To satisfy Rule 9(b)'s particularity standard it is generally required that a complaint identify (1) ***the precise statements, documents or misrepresentations made***; (2) ***the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gains by the alleged fraud.*** *Ambrosia Coal & Const. Co. v. Pages Morales,* 482 F.3d 1309, 1316–17 (11th Cir.2007). *See also U.S. ex el. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir.2006). Furthermore, Rule 9(b) requires more than mere conjecture, speculation, or conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud. *See U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir.2002)(*"*If Rule 9(b) is to carry any water*,* it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [a] conclusory fashion.... [A] plaintiff is not expected to actually prove his allegations," but it must offer more than "mere conjecture."). *Id*. Rule 9(b) has been applied to a RICO claim predicated on a pattern of mail and wire fraud offenses. *Brooks v. Blue Cross and Blue*

*Shield of Florida, Inc.,* 116 F.3d 1364, 1380–82 (11th Cir.1997)(Rule 9(b) applies to a RICO action predicated on a pattern of mail and wire fraud; requiring plaintiff to identify the fraudulent representations with particularity and that, "…[a]t a minimum, the plaintiffs [ ] allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed")(citations omitted); *Ambrosia Coal & Const. Co.,* 482 F.3d at 1316–17 (similar). Similarly, when FDUTPA allegations are based on fraudulent conduct the heightened pleading requirements of Fed. R. Civ. P. 9 (b) applies, requiring the even greater burden of setting forth all allegations of fraud with particularity as to each individual defendant. The FDUTPA claim merely sets forth a single, threadbare, conclusory allegation that all Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices. Accordingly, the FDUTPA allegations must be dismissed. This same reasoning obviously applies equally to GEICO's unjust enrichment claim, as it, too, is based upon an alleged unified course of fraudulent conduct. For these reasons, Premium Medical respectfully requests that this Court dismiss Plaintiffs' Common Law Fraud, FDUTPA, and Unjust Enrichment counts.

## VII.   <u>CONCLUSION</u>

The complaint should be dismissed in its entirety for the failure to state a cause of action for which relief can be granted.

**WHEREFORE**, the Defendants, Mabel Gutierrez Concepcion, LMT and Premium Medical Center Corp., by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(e), pray this Court grant the relief requested herein.

Respectfully Submitted, February 24, 2022

/s/Kenneth B. Schurr
Kenneth B. Schurr, Esq. - FBN 876100
2030 S. Douglas Road, Suite 105
Coral Gables, FL 33134
e.      counselken@schurrlaw.com
        kbsservice@Schurrlaw.com

t.      305-441-9031

## **CERTIFICATE OF SERVICE**

I certify that on February 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record. I also certify that the foregoing document is also being served in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing via the CM/ECF system

/s/Kenneth B. Schurr Esq.
Kenneth B. Schurr

-