**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 21-24155-CIV-MORENO/GOODMAN**

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

      Plaintiffs,

v.

GILBERTO SECO, M.D., et al.,

      Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION TO STRIKE DR. JAMES DILLARD**

*"Cross-Examination is the greatest legal engine ever invented for the discovery of truth."*

-   *California v. Green*, 399 U.S. 149, 158 (1970)

Defendants who filed the Motion to Strike Dr. James Dillard [ECF No. 105] have made many negative comments about Dr. Dillard, a physician, chiropractor, and acupuncturist who is board certified in physical medicine and rehabilitation (and who Plaintiffs retained as their expert witness). They accuse him of submitting a false affidavit, urging that it should be stricken as a sham. They brand his methodology as inadequate. They strongly insinuate that he had no input at all in preparing his report -- and that Plaintiffs' counsel "manufactured the report and Dillard simply signed without reading

it."

Based on these allegations (and others), Defendants want the Court to prevent Dr. Dillard from testifying at trial and from offering opinions in support of GEICO's lawsuit, which contends that Defendants wrongfully obtained more than $3.8 million by submitting thousands of fraudulent no-fault insurance charges for medically unnecessary and otherwise non-reimbursable healthcare services purportedly provided to Florida automobile accident victims eligible for coverage under GEICO no-fault insurance policies.

For reasons outlined in greater detail below, the Undersigned **denies** the motion.[1] Defendants (doctors, healthcare clinics, and clinic owners) may well be able to undermine Dr. Dillard's expert opinions through vigorous cross-examination. But the mere fact that they might be able to shake the foundation of his opinions at trial does not mean that their challenges are strong enough to justify an order *excluding* his trial testimony or striking his affidavit. That's what cross-examination is all about.

---

[1]     The Undersigned is issuing an Order (as opposed to a Report and Recommendations) on Defendants' *Daubert* motion because rulings on the admissibility of evidence at trial (including expert testimony) are non-dispositive matters. *See Villafana v. Auto-Owners Ins.*, No. CIV.A.06 0684 WS B, 2007 WL 1810513, at *1 (S.D. Ala. June 22, 2007) (stating that "the weight of authority holds that a magistrate judge's order that excludes a plaintiff's expert from testifying is not a dispositive ruling"); *see also Bennie v. Compaq Computer Corp.*, No. 00-2235-CIV, 2002 WL 34714567, at *1 (S.D. Fla. Oct. 21, 2002) (issuing an order on a motion to exclude expert testimony because "[a] Magistrate Judge may enter an order, as opposed to a report and recommendation, regarding a motion in limine that is based on Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)").

2

I.      **The Opinions at Issue**

GEICO's claim is that Defendants pervasively billed for medically unnecessary and illusory services, misrepresented the nature and extent of the services, misrepresented the identities of the actual service providers, and concealed the fact that Defendants associated with the medical clinics were billing GEICO for "physical therapy" services which were either not performed or performed by massage therapists and/or others who lacked the requisite licenses to perform the services.

GEICO filed a summary judgment motion [ECF No. 86] and submitted in support Dr. Dillard's declaration [ECF No. 88-1], which was signed under penalty of perjury pursuant to 28 U.S.C. § 1746. The declaration is, for all practical purposes, Dr. Dillard's expert report, accompanied by the declaration. At bottom, Dr. Dillard's opinion is as follows:

> Med-Union Medical, New Generation Rehab and Gonzalez's Medical employed set[,] pre-determined treatment protocols for nearly all of their GEICO patients, and that the services (virtually always examinations and physical therapy) were medically unnecessary and were administered without consideration of the individual circumstances of the Insureds subjected to these services. The services provided to the GEICO patients at Med-Union Medical, New Generation Rehab and Gonzalez's Medical fell below the standards of care.

[ECF No. 88-1, p. 1].

Dr. Dillard's report also stated that these three clinics "often misrepresented and exaggerated the nature and extent of the underlying services, and that the Defendants **upcoded** their initial and follow-up patient examinations." *Id.* at 6 (emphasis added).

3

Defendants[2] filed a Motion to Strike Dr. Dillard, asserting several challenges.[3]

The Challenges

**First**, Defendants say Dr. Dillard's declaration should be stricken as a sham. They note that his report/declaration concludes that, in his opinion, Defendants upcoded their examination results but that his deposition testimony was that he did not know.

Because Defendants accuse Dr. Dillard of submitting a false declaration, the precise language he used is important. The deposition testimony is as follows:

> **Q.**   **Doctor, is it your opinion that Dr. Seco falsified or fraudulently inserted a false diagnosis?**
>
> **A.**   **There's no way for me to know or read Dr. Seco's mind.**
>
> **Q.**   **So the answer to my question is, no?**
>
> **A.**   **It is, no. It's just highly repetitive.**
>
> **Q.**   **Okay. Doctor, is it your opinion that the other medical providers who examined these insureds, did they falsify their medical judgment or diagnosis?**
>
> **A.**   **I don't know.**

[ECF No. 89-4, p. 54:1-10].

---

[2]   Dr. Gilbert Seco, Gonzalez's Medical Center Inc., Jose J. Gonzalez, Med-Union Medical Center, Sergio Vento Angarica, Shinuet Cabrera, Aliuska Amigo, and Jorge A. Gonzalez jointly filed the motion.

[3]   Senior United States District Judge Federico A. Moreno referred all pretrial matters to the Undersigned. [ECF No. 101].

As noted, Dr. Dillard's declaration (which is one page) does not contain any actual opinions. It attaches a report, which is where his opinions are found. According to Defendants' motion [ECF No. 105, p. 2], Dr. Dillard's comments about upcoding are found in pages 11-12 of his report. That is incorrect. There is no discussion about upcoding on those pages.

Instead, Dr. Dillard's views about upcoding appear in *other* pages of his report, and they are listed below:

> **[I]t is my opinion that the billing submitted through Med-Union Medical, New Generation Rehab and Gonzalez's Medical often misrepresented and exaggerated the nature and extent of the underlying services, and that the Defendants upcoded their initial and follow-up patient examinations.**
>
> ***
>
> **The Defendants upcoded their initial and follow-up patient examinations because they failed to comply with the requirements to bill patient examinations using CPT codes[4] 99204, 99205, 99213, 99214, and/or**

---

[4]      According to Dr. Dillard's report, CPT stands for current procedural terminology. [ECF No. 88-1, p. 5]. His report explains that the American Medical Association has promulgated various CPT codes that are used to bill for healthcare services, including patient examinations. *Id.* at 6.

Dr. Dillard describes the different levels of CPT codes as follows:

Level 1 codes ending in "1" are the shortest, least comprehensive and complex types of examinations, level 2, 3, and 4 codes ending in "2", "3", and "4" are intermediate level examinations of progressively increasing length, comprehensiveness and complexity, and level 5 codes ending in "5" are the longest, most comprehensive and complex types of examinations.

**99215. Based on my review of the Clinics' records, it is obvious that the information contained in the Defendants' treatment notes was boilerplate and repetitive from patient to patient, or simply exaggerated, and did not document the required elements of a comprehensive examination or history. Thus, the initial examinations could not qualify as legitimate "detailed" or "comprehensive" patient examinations and the treating healthcare provider could not legitimately have spent at least 45 minutes let alone 60 minutes with the patients or their families.**

[ECF No. 88-1, pp. 6, 8 (footnote added)].

The deposition was given on August 30, 2022. The declaration was signed on October 5, 2022. But the report (with his opinions) is dated August 8, 2022 -- *before* the deposition.

**Second,** Defendants say Dr. Dillard's expert opinions should be excluded because his methodology is unreliable. More specifically, they say his opinion that Defendants were not honest in their opinions on coding and medical necessity is flawed because there is no liability unless the evidence establishes that the speaker did not knowingly tell the entire truth. According to Defendants, Dr. Dillard needed to (but did not) rely on proof showing that they had "superior knowledge" of incompatible facts unknown to Plaintiff. They also argue that Dr. Dillard's opinion violates the rule that an honestly-formed *opinion* is not false, even if true. Phrased differently, they contend that an expert opinion

---

*Id.* at 6-7. Dr. Dillard's report further states that "[p]hysicians and healthcare practices should be aware of the standards governing the CPT codes they use in their practices." *Id.* at 7.

which merely disagrees with a treating clinician's opinion is insufficient by itself to establish an objective falsehood.

**Third,** they argue that Dr. Dillard's opinion that services were upcoded and medically unnecessary is irrelevant and inadmissible because it does no more than opine that Defendants' actions on coding and necessity were merely mistaken. According to Defendants' motion, the issue in the case is not whether the services were upcoded and unnecessary. Instead, they say, the issue is whether their views on coding and necessity were *dishonest.*

**Fourth,** they argue, in the alternative, that these opinions, even if technically relevant, should be excluded under Federal Rule of Evidence 403 because they would be outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury.

**Fifth,** the motion argues that Dr. Dillard's opinion that the medical directors were not performing systematic reviews is unsound because the earlier alleged infirmity "sparks a domino effect."

**Sixth,** Defendants say that Dr. Dillard's opinion that the licensed massage therapists ("LMTs") were not supervised is based on a deficient methodology because it fails to acknowledge that Dr. Seco could exercise indirect supervision of the LMTs, which would not require him to be on-site. Defendants say that Dr. Seco is permitted "to

supervise five offices in capacity as a practicing physician and five clinics as a medical director at once." [ECF No. 105, p. 10].

**Seventh,** they claim that Dr. Dillard's opinion that the LMTs were performing physical therapy but not medical treatment is "nothing short of conclusory" and is therefore legally insufficient.

**Eighth**, the motion claims that Dr. Dillard should not be permitted to offer opinion testimony because he did not substantially participate in preparing his report. Defendants base this accusation on their claim that Dr. Dillard "said he didn't know if Dr. Seco is lying even though his report says the opposite." Therefore, Defendants argue, Dr. Dillard's testimony "doesn't jive unless this Court infers that Dillard had very little input, or no input at all, in preparing his report; that Plaintiff's counsel *manufactured the report* and Dillard simply *signed without reading it*. Nothing else explains the disconnect. The *inference should be drawn*." [ECF No. 105, p. 13 (emphasis added)].

**Ninth,** Defendants say their argument is bolstered by the fact that Plaintiffs' counsel used Dr. Dillard in other cases with "substantially identical reports which contains [sic] language lifted from a book authored by Plaintiffs' counsel." *Id.* at 13.

<u>Plaintiffs' Opposition and Defendants' Reply</u>

Plaintiffs note that the Moving Defendants failed to identify any expert witness of their own, and they contend that this omission is why Defendants are eager to exclude Dr. Dillard's expert opinions.

In response to the allegation that Dr. Dillard supposedly did not substantially participate in the preparation of his report, Plaintiffs submitted a declaration from Dr. Dillard in which he explained that he: (1) reviewed the clinics' treatment and billing records and other materials, including deposition transcripts and interrogatory responses; (2) met with Plaintiffs' counsel at length to discuss his observations and conclusions; (3) typed his own expert report based on his review and then provided it to Plaintiffs' counsel; (4) worked with Plaintiffs' counsel to put his expert report into final form; and (5) reviewed and signed his expert report. Plaintiffs' response points out that the motion offers no actual *evidence* to support Defendants' conclusory contentions.

Plaintiffs say that Dr. Dillard's declaration is consistent with, and does not "flatly contradict," his deposition testimony. At bottom, Plaintiffs contend that Dr. Dillard's declaration -- where he says that all three clinics have highly repetitive findings and that the treatment notes were boilerplate and repetitive from patient to patient or simply exaggerated -- does not flatly contradict his deposition testimony that he cannot read Dr. Seco's mind about the diagnosis, which he described as "just highly repetitive."

Plaintiffs contend that Dr. Dillard's methodology is sound and that the so-called "superior knowledge" argument is inapplicable. They also posit that Dr. Dillard's opinions are, at a minimum, relevant to GEICO's claims of unlawful billing for medically unnecessary healthcare services. Plaintiffs note that Defendants' motion fails to explain *how* or *why* his expert testimony will be unfairly prejudicial or confusing to the jury.

Plaintiffs also argue that there is nothing improper about the simple fact that some of the general language in Dr. Dillard's report overlaps with his prior expert reports or even a report by another expert in highly analogous cases.

According to Plaintiffs,

> [e]xperts who review these types of cases often express substantially similar opinions regarding such topics as the standard of care for soft tissue injury patients, the reasons why the respective defendants' patient examinations seemed to be fabricated, the standards for the use of certain examination billing codes, the reasons why the respective defendants' billing codes were upcoded, and so forth.

[ECF No. 122, p. 11]. Therefore, Plaintiffs say, "[t]he similarities among expert reports in highly analogous cases involving similar or identical issues does not diminish the fact that the opinions expressed are the experts' opinions, not the opinions of counsel." *Id.*

From an overarching perspective, Plaintiffs argue that the challenges raised go to the weight and credibility of Dr. Dillard's opinions, not their admissibility.

Defendants' reply does not, for all practical purposes, raise any new arguments. Instead, it merely repeats and emphasizes the same arguments asserted in the motion itself. Defendants repeat their theory that "the issue here is not whether Defendants' [sic] erred in their diagnosis" because "the issue instead is deceit -- particularly, whether Defendants' opinion statements on coding and necessity are statements of fact." [ECF No. 125, p. 5]. And this, Defendants say again, "requires a different kind of proof that has nothing to do [sic] whether or not Defendants' [sic] erred." *Id.*

10

## II.    Applicable Legal Standard

The District Court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993).

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d

at 1292; *see also Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, a court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at *7 (*quoting Quiet Tech DC–8, Inc.*, 326 F.3d at 1341). *Cf. Peng v. Citizens Property Ins. Co.*, 337 So. 3d 488, 493 (Fla. 3d DCA 2022) ("[A]ny discrepancies between [an expert]'s affidavit and his deposition may provide fertile ground for cross-examination but should not serve as the basis for being stricken under *Daubert*.").

On the other hand, courts do not hesitate to exclude purported expert testimony which does not pass muster. *See Allison*, 184 F.3d at 1322 (affirming summary judgment in favor of silicone breast implant manufacturers and upholding district court's exclusion of proffered expert's causation testimony under *Daubert*); *Rink*, 400 F.3d at 1286 (affirming exclusion of expert testimony in products liability and toxic trespass action against pesticide manufacturer and therefore affirming summary judgment for defendant); *Frazier*, 387 F.3d at 1263 (finding trial court in criminal case did not abuse its discretion in excluding proffered expert testimony from forensic investigator); *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1201–03 (11th Cir. 2010) (affirming defense summary judgment for infant car seat manufacturer in products liability lawsuit involving child who sustained

traumatic brain injuries and upholding trial court ruling which excluded expert testimony because the experts were not sufficiently reliable).

## III.   Analysis

The Undersigned rejects Defendants' argument that Dr. Dillard did not substantially participate in preparing his report. That theory is pure supposition. It is a wild hunch. Dr. Dillard's declaration, which is *evidence* (not mere speculation), is to the contrary. Moreover, the mere fact that Defendants believe they have caught Dr. Dillard in one purported inconsistency about whether he believes the diagnoses are false is too thin a reed to support the strategic guess that Dr. Dillard did not prepare his report (or the inference that the attorneys ghost-wrote the declaration for him).

Similarly, the mere fact that there is some commonality in the language used by Dr. Dillard and other experts in reports concerning the same general subject hardly means that there is some misconduct involving attorneys who supposedly "ghost-write" reports for experts. In fact, it would be odd if an expert did **not** use at least similar language in all of her reports involving the same general topic.

Ignoring the speculative nature of Defendants' challenges, they are, in and of themselves, inadequate to justify exclusion of Dr. Dillard. *See generally Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1330-34 (N.D. Ala. 2012) (rejecting motion to exclude cumulative expert testimony and permitting both experts to testify even though the first three paragraphs "contain the exact same language" and even though the two

experts reach similar conclusions and the final paragraphs in both reports "are identical").

If Defendants still believe that Dr. Dillard did not substantially participate in the drafting of his expert report (even though his declaration unequivocally says that he did) and still posit that counsel's so-called involvement renders Dr. Dillard's expert opinions suspect and not credible, then they are free to pursue that theory on cross-examination. *United States v. Kalymon*, 541 F.3d 624, 637-38 (6th Cir. 2008) (there is "nothing nefarious" about a scenario where experts told counsel their substantive opinions and counsel reduced those opinions to writing for experts' review and signature); *Bartlett v. Mutual Pharm. Co., Inc.*, 742 F. Supp. 2d 182, 197 (D.N.H. 2010) (court would not exclude the testimony of two experts even though their reports contained similar language and must have been prepared by counsel; the reports were based on the experts' prior substantive input, reflected the testimony they would give, and were signed by the witnesses); *Valley View Development, Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1049 (N.D. Okla. 2010) (fact that a professional engineer did not draft his expert report did not preclude him from providing expert testimony; the affidavit the engineer had drafted before litigation formed the basis of the expert report, and the engineer significantly reviewed and edited the report); *Crowley v. Chait*, 322 F. Supp. 2d 530, 543-44 (D.N.J. 2004) (testimony of the plaintiff's expert witness would not be excluded on the ground that although the expert signed it, the report was written by the plaintiff's lawyer; although

the initial draft of the report was prepared by counsel, it was based on a narrative drafted by the attorney following a dictation interview with the expert, and the expert claimed to have substantial input into what was in the report).

Defendants have not even approached the point of establishing that Plaintiffs' attorneys were so involved in the preparation of the report that it must be stricken (and Dr. Dillard be banned from testifying). *See Trigon Ins. Co. v. United States,* 204 F.R.D. 277, 291-296 (E.D. Va. 2001) (evidence that the government's experts collaborated with the government's non–testifying litigation consultant in drafting expert reports was insufficient to established that the reports were "ghost written" by the consultant so as to warrant preclusion of their testimony); *Transcon. Gas Pipeline Corp. v. Societe d' Exploitation du Solitaire, S.A.,* No. 05-1295, 2007 WL 2712936, at *2 (E.D. La. Sept. 13, 2007) (finding that the defendants had "fallen short" of showing that the substantive writing of the expert reports was by someone other than the experts and noting that the "argument regarding 'ghost-writing' goes more to the weight of the evidence, rather than its admissibility").

The Undersigned also rejects Defendants' argument that Dr. Dillard's declaration is a sham and that it should be stricken (and that he should be precluded from testifying at trial).

First, the timing of the purported sham declaration is upside down. The general rule is that an affidavit may be disregarded as a sham when a party or witness first gives clear answers to unambiguous questions at a deposition and then tries to create an issue

of fact with an affidavit which merely contradicts, without explanation, the previously-provided clear testimony. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). Here, the declaration is actually a report which *pre-dated* the deposition testimony. So it could not have been created after a deposition and could not have been created with a purpose to generate a factual issue over a point in deposition testimony.

Second, the Undersigned does not view the targeted language as a discrepancy significant enough to justify an Order striking either the report, the declaration or the deposition testimony. In fact, in the very case cited by Defendants (*Tippens*), the Eleventh Circuit *reversed* a summary judgment for the defendant after holding that the affidavit was *not inherently inconsistent* with the deposition testimony and should therefore have been considered in the summary judgment motion assessment. Moreover, *Tippens* further held that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953.

Defendants focus on the fact that Dr. Dillard said he could not read Dr. Seco's mind in response to a question about whether his opinion is that Dr. Seco falsified or fraudulently inserted a false diagnosis. However, Dr. Dillard then immediately said that the diagnoses were "highly repetitive," which is not a transparent sham when compared to his report/declaration where he opines that the repetitive findings make it appear as

though a predetermined process was being used and that the required elements of a comprehensive examination or history were not properly documented.

To the extent that this is even inconsistent in the first place (and, on balance and in context, it does not appear to be), it is far from being a substantial inconsistency. It is woefully short of reaching the requisite level to support a sham declaration conclusion. Defendants may, of course, cross-examine Dr. Dillard about this so-called sham.

The Undersigned also rejects as unpersuasive Defendants' arguments which flow from their view that Dr. Dillard's opinions are based on flawed methodology because he does not base them on the "superior knowledge" exception. More on this later, when the Undersigned discusses an Order entered by Chief Magistrate Judge Edwin G. Torres.

But even if those standards applied and even if Plaintiffs could not possibly meet the superior knowledge test, Dr. Dillard's opinions about whether the charges were fabricated and/or exaggerated and whether the treatment protocols were pre-determined are, at a minimum, *relevant* to GEICO's claims. In fact, the Eleventh Circuit affirmed an Order entering summary judgment in GEICO's favor in a similar PIP fraud case in which counsel for both sides are the same as counsel in the instant case. *Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 21-10297, 2021 WL 5157535, at *1 (11th Cir. Nov. 5, 2021). In that case, Defendants unsuccessfully asserted the primary arguments they raise here: their view that "a plaintiff fails to prove falsity where the evidence merely demonstrated a difference of opinion between physicians" and their reliance on

Restatement (Second) Torts § 539(1)(a). *See Gov't Emps. Ins. Co. v. Diagnostic Health Care, Inc.*, No. 18-cv-20101-JEM (S.D. Fla. Mar. 18, 2019), ECF 75, p. 23, Defendants' Response and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment.

In addition, the Undersigned is not convinced by Defendants' primary argument that Dr. Dillard's opinions fail the *Daubert* standard because *opinions* are not actionable for fraud and Dr. Dillard needed to rely on statements of *fact* if he intended to undermine the diagnoses of the clinics' medical director.

As another Court in this District has explained, "GEICO does not seek to hold [the purported "medical director" of each clinic] liable for mistaken **'opinions**,' and [the] [d]efendants offer no justification or law for why [the medical director's] false diagnoses and treatment plans constitute "**opinion**." *Gov't Emps. Ins. Co.  v. Mas*, No. 19-21183-KMW, 2020 WL 9604436, at *9 (S.D. Fla. Mar. 31, 2020) (emphasis added).

The *Mas* Court further explained that "to the contrary," courts have found nearly identical allegations of false patient examination results actionable for fraudulent misrepresentation under claims asserted in similar cases. *See, e.g., Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330A(SR), 2016 WL 11258223, at *6 (W.D.N.Y. Dec. 2, 2016), report and recommendation adopted, No. 12-CV-330, 2017 WL 4837584 (W.D.N.Y. Oct. 26, 2017) (the complaint alleged that the defendants' "initial consultation reports reveal the use of boilerplate language," with "virtually identical recommendations for a limited number of pain management treatments"); *Gov't Emps.  Ins.  Co.  v.  Jacques*, No.

14CIV5299KAMVMS, 2017 WL 9487191, at *8 (E.D.N.Y. Feb. 13, 2017), report and recommendation adopted, No. 14-CV-5299(KAM)(VMS), 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017) (the complaint alleged that the defendants "made nearly identical, predetermined 'diagnoses' for every [i]nsured, and they prescribed an almost identical course of treatment for each [i]nsured"); *Gov't Emps. Ins. Co. v. Strut*, No. 19-CV-728V, 2019 WL 6338023, at *6 (W.D.N.Y. Nov. 26, 2019), report and recommendation adopted, No. 19-CV-728 (JLS), 2020 WL 1820500 (W.D.N.Y. Apr. 10, 2020) (the complaint alleged that "a statistically impossible number of purported initial examination reports [were] submitted by or on behalf of the [d]efendants [including] identical patient history language").[5]

Moreover, in *Mas*, Chief Magistrate Judge Edwin G. Torres previously denied a **substantially similar motion** to strike Dr. Dillard as an expert. *Gov't Emps. Ins. Co. v. Mas*, No. 19-21183-CIV, 2020 WL 7042645 (S.D. Fla. Dec. 1, 2020). In that case, GEICO filed a summary judgment motion and submitted Dr. Dillard's declaration and report as support. [ECF No. 102-1 in Case No. 19-21183-KMW]. The defendant doctor (represented by the same counsel who represents Defendants here filed a motion to strike Dr. Dillard's expert opinion. [ECF No. 92 in Case No. 19-21183-KMW]. GEICO filed an opposition

---

[5]   Counsel for both sides in *Mas* are the same attorneys who are involved in representing the parties in the instant case.

21

response and the defendant filed a reply. [ECF Nos. 110, 124 in Case No. 19-21183-KMW].

Judge Torres denied the motion to strike Dr. Dillard. 2020 WL 7042645, *3-6.

In his well-written and logical opinion,[6] Judge Torres noted the existence of well-recognized exceptions to the general rule that fraud is not actionable if based on a mere opinion, rather than a material fact. Specifically, he explained that an exception exists where "the person expressing the opinion is one having **superior knowledge** of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false." *Id.* at *3 (quoting *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) (emphasis supplied)). Additionally, "if 'the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform,' then 'such a promise may also constitute a fraudulent misrepresentation.'" *Id.*

Similar to Dr. Mas (the defendant doctor in the case in which Judge Torres issued his order denying the motion to strike Dr. Dillard), Dr. Seco[7] was the medical director of several clinics in the instant case. [ECF No. 89-2]. In his declaration, Dr. Seco said "he

---

[6]    Judge Torres' Order was entered on December 1, 20**20**. Defendants' motion to strike in the instant case was filed on November 8, 20**22**. Plaintiffs filed their response on November 22, 2022 and Defendants filed their reply on November 29, 2022. Despite the substantial similarity between the two motions and the common involvement of the attorneys in both cases, no party referenced Judge Torres' Order in their briefing.

[7]    Defendants submitted Dr. Seco's declaration in support of their summary judgment motion. [ECF No. 89-2].

personally evaluated the Geico insureds" at Gonzalez's Medical and was the clinic medical director for three other clinics. He also proclaimed that "the therapeutic services provided at each of the clinics in this case were passive modalities in which simple handheld devices, or physical agents, were used. Dr. Seco's declaration also represents that he performed systematic reviews at Med-Union and New Generation and "checked the billing invoices to ensure the charges [were] consistent with the medical chart to ensure there [was] no billing for services not rendered."

Thus, to use the language from Judge Torres' Order in *Mas,* Dr. Seco was [or the evidence could be interpreted to show] a person "having superior knowledge of the subject of the statement." 2020 WL 7042645, *3 (quoting *Mejia*, 781 So. 2d at 1177).

Dr. Dillard's declaration explains that the highly repetitive findings in the clinics' charts show combinations of neurological findings that are essentially never seen in legitimate clinical practice, and thus, further calls into question the veracity of all the other putative findings documented." [ECF No. 88-1, pp. 4-5].

Moreover, he also opines that Dr. Seco either did not conduct any legitimate systematic reviews of the clinics' billing and treatment records or did conduct the reviews and

> therefore must have been aware of the misrepresentations in billing, the
> fabrications and exaggerations in the initial and follow-up examination
> reports, the lack of medical necessity for the purported physical therapy
> services, and the failure to perform the purported physical therapy services
> in accordance with the relevant standards of care, but failed to act or take
> corrective action.

*Id.* at 8.

Therefore, to return to Judge Torres' analysis for an applicable quote, "the second part of the exception also applies because there is evidence in the record that Plaintiffs can prove, through Dr. Dillard, that Dr. [Seco] 'knew or should have known from facts in his . . . possession that the statement was false.'" 2020 WL 7042645, *4 (quoting *Mejia*, 781 So. 2d at 1177).

Defendants' argument about opinions, though, is problematic at a more *fundamental* level. Initially, it seems as though Defendants have *assumed* that Dr. Seco rendered medical **opinions**. But the evidence suggests the possibility that he merely rubber-stamped the documents completed by other healthcare providers (which means he was not actually issuing medical opinions). Therefore, as Judge Torres succinctly reasoned, "if Plaintiffs can present evidence to that effect (as Dr. Dillard suggests in his expert report), the rule on using an opinion to pursue a fraud claim never comes into play." *Id.* at *5.

In addition, Defendants want the Court to conclude that an exception to the general rule (that fraud cannot be based solely on an opinion) is not present, but, as Judge Torres explained, "that determination is for a jury to decide." *Id.*[8]

---

[8]     GEICO also submitted a declaration from Dr. Dillard in *Gov't Emps. Ins. Co. v. Mark A. Cerececa, D.C., et al*, No. 19-22206 (S.D. Fla. Jan. 5, 2021), ECF No. 110. GEICO submitted the declaration on January 5, 2021 but the parties filed a notice of settlement on March 9, 2021. [ECF No. 121]. The defendants there did not file a motion to strike or exclude Dr. Dillard's expert opinion testimony, perhaps because they were familiar with Judge

Defendants' challenge to Dr. Dillard's methodology overlooks the important fact that he reviewed voluminous records and that an expert need not examine or interview a patient to render opinions about diagnosis and the course of treatment. *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216-17 (S.D. Fla. 2016) (rejecting the defendant cruise line's argument that the expert physician's testimony should be excluded in its entirety and accepting the "general proposition that a physician need not necessarily examine a patient, interview that patient, or speak with the patient's treating physician(s) in order to render opinions regarding diagnosis, prognosis, course of treatment and perhaps even causation") (internal quotations and citation omitted).

Dr. Dillard's expert opinion aids in contextualizing and explaining the falsities and misrepresentations in Defendants' billing and will therefore aid the trier of fact in analyzing said information. As explained in *Geyer*, "any credibility issues [concerning an expert's methodology] are for the jury to determine," and Defendants will have the opportunity to cross examine the expert at trial. *Id*. at 1217-18 (quoting *Daubert* for the rule that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

---

Torres' Order in *Mas* (denying the motion) or perhaps because settlement negotiations were ongoing.

Defendants' approach is akin to "throwing the baby out with the bathwater," as it seeks the most-extreme remedy (preventing Dr. Dillard from giving any expert opinion testimony) without considering the viability of a less-harsh remedy (i.e., seeking to undermine his opinions on cross-examination).

In both civil and criminal cases, the Eleventh Circuit Court of Appeals has discussed a party's ability to use cross-examination to challenge the opinions of experts as an alternative to an order excluding the expert. *See, e.g., United States v. Hinestroza-Newbbooll*, No. 20-13891, 2022 WL 2678773, at *3 (11th Cir. July 12, 2022) (affirming conviction for trafficking cocaine in international waters and noting "[t]hat [the defendant] identifie[d] shortcomings that could be raised on cross-examination [did] not show that the evidence was inadmissible"); *United States v. Hood*, 846 F. App'x 825, 829 (11th Cir. 2021) (affirming robbery conviction and explaining that the defendant "was able to attack the expert's methodology through cross-examination at trial, and the district court instructed the jury as to the burden of proof and the nature of expert testimony"); *Crawford v. ITW Food Equip. Grp., LLC,* 977 F.3d 1331 (11th Cir. 2020) (affirming $4.05 million jury verdict for the plaintiff in personal injury trial and explaining that "most of the issues" raised about the expert's testimony were "objections going to the weight of his testimony regarding his alternative design, and not objections to its admissibility" and noting that identifying flaws in an expert's opinion "is precisely the role of cross-examination"); *United States v. Williams*, 865 F.3d 1328, 1340 (11th Cir.

2017) ("[A]ny quarrels with [the expert's] qualifications were fodder for cross-examination rather than reason to exclude his testimony altogether.").

In fact, the Eleventh Circuit does not hesitate to **reverse** an order excluding an expert's testimony when the challenge should have instead been explored on cross-examination. *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 857 (11th Cir. 2021) (reversing order excluding the plaintiff's expert witness and noting that "the experts' disagreement regarding the placement of the shaft [used during a laparoscopic hysterectomy] is precisely the type of dispute that should be decided within the crucible of **cross-examination**, rather than by a judge at the *Daubert* stage" (emphasis supplied)); *Sorrels v NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015) (vacating summary judgment for defendant cruise ship because, among other reasons, the district court abused its discretion in excluding expert's proposed opinion testimony about coefficient of friction of cruise ship's wet exterior pool deck, explaining that the expert's 520-day delay in inspecting the deck concerned the weight, not the admissibility, of his opinion testimony and noting that cross-examination and the presentation of contrary evidence are the "traditional and appropriate means" to undermine admissible expert opinion testimony).

Defendants' arguments about the level and type of supervision (direct v. indirect) which Dr. Seco provided and their fact-based challenge to whether the LMTs were providing physical therapy are not the type of issues which would justify an Order

striking Dr. Dillard. Instead, they are precisely the type of dispute which Defendants can pursue at trial through substantial cross-examination.

Finally, the Undersigned is far from convinced by Defendants unfair prejudice argument under Federal Rule of Evidence 403. *See Johnson v Carnival Corp.*, 533 F. Supp. 3d 1196, 1202 (S.D. Fla. 2021) (denying motion to strike testimony of defense expert in personal injury lawsuit arising from passenger's fall down an interior staircase and rejecting unfair prejudice argument after noting that Rule 403 is "an extraordinary remedy which the district court should invoke sparingly," "the balance should be struck in favor of admissibility," and the plaintiff "[would] be able to freely explore and expose any weaknesses in [the expert's] testimony through cross-examination").

For the reasons outlined above, the Undersigned **denies** Defendants' motion to strike Dr. Dillard.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on December 7, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Federico A. Moreno
All Counsel of Record