UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 21-24155-CIV-MORENO/GOODMAN

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

    Plaintiffs,

v.

GILBERTO SECO, M.D., et al.,

    Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION *IN LIMINE***

Defendants Gonzalez's Medical Center, Inc., Gilberto Seco, M.D., and Jose J. Gonzalez (collectively, "Defendants") filed a motion *in limine* against Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"). [ECF No. 108]. Defendants' motion seeks several types of relief in a requested Order which would: (1) exclude evidence that Dr. Seco and Gonzalez were arrested in May 2021 and accused of myriad fraud-related crimes involving medical clinics; (2) preclude Plaintiffs from calling law enforcement witnesses and informants to provide testimony about the arrests "and [the] incident that led to the arrests"; (3) exclude testimony that Dr. Tony Nguyen and

Dr. Wilfredo Blasini reviewed only five charts a month and did not know how many patients were being treated at Gonzalez's Medical.

Plaintiffs filed an opposition response and Defendants filed a reply. [ECF Nos. 119; 123]. Senior United States District Judge Federico A. Moreno referred all pretrial proceedings to the Undersigned. [ECF No. 101].

For the reasons outlined below, the Undersigned **grants the motion in part and denies the motion in part**. However, these rulings are not binding on Judge Moreno, who, as the trial judge, has the discretion to rule differently, especially if the evidence presented at the time of trial appears to be different from the manner in which the parties have portrayed it here in their briefing.

**Factual Background and Parties' Primary Contentions**

Arrests

GEICO's lawsuit (i.e., the Amended Complaint [ECF No. 61]) contends that Defendants wrongfully obtained more than $3.8 million by submitting thousands of fraudulent no-fault insurance charges for medically unnecessary and otherwise non-reimbursable healthcare services purportedly provided to Florida automobile accident victims eligible for coverage under GEICO no-fault insurance policies. Plaintiffs originally obtained a default against Dr. Seco (and other Defendants) for failure to attend a scheduled mediation, but the Court later vacated those defaults. [ECF No. 127].

In their motion, Defendants contend that the arrests of Dr. Seco and Gonzalez do

not arise from an incident connected to the underlying insurance-related claims. GEICO does not *technically* dispute that, but it argues that the arrests followed a Bureau of Insurance Fraud undercover investigation which "revealed various types of fraudulent and unlawful activity at Gonzalez's Medical [Center] which are *similar in nature* to GEICO's allegations against . . . Defendants in the present case." [ECF No. 119, p. 2 (emphasis supplied)]. GEICO further argues that "it certainly *appears* that J.J. Gonzalez and Seco's arrests arise out of the transactions from which this trial [sic] arose, namely their arrests were the product of fraudulent insurance[-]related activities at Gonzalez's Medical, the same or *similar* underlying conduct that forms the basis of the allegations in GEICO's Amended Complaint." *Id.* at 4 (emphasis added).

Confronted with GEICO's less-than-subtle accusation that the arrests arose from the transactions at issue in this lawsuit, Defendants' reply repeats the position that the arrests do not arise from the same transactions. Instead, they say, the arrests "stem from an unrelated incident." [ECF No. 123, p. 1]. Defendants also highlight the fact that Plaintiffs do not attempt to explain how the arrests are related, an omission they deem "telling" and indicative of a "conclusory argument with no foundation." *Id*.

Plaintiffs do not assert that the two arrested Defendants were *convicted* of any of the charged crimes, however.

Plaintiffs argue that the arrests are admissible for purposes other than impeachment. For example, they say, evidence of the arrests is admissible "to show

3

interest or bias on the part of J.J. Gonzalez and Seco should they choose to testify, or to show bias of any other witness they choose to present at trial who was involved in the underlying PIP fraud scheme." [ECF No. 119, p. 4]. In a similar argument, GEICO contends that, to the extent Defendants or any witness they choose to present were subject to the Bureau of Fraud investigation and subsequent arrest, evidence of the arrests should be permissible to show bias or lack of impartiality on the part of the witnesses. *Id.*

Defendants reject GEICO's arguments, saying the purported rule (i.e., permitting evidence of the arrests to show bias or lack of impartiality) applies to *witnesses*, not parties. They also note that GEICO cited no authority where evidence of a party's arrests arising from an unrelated incident is admissible in a civil case to show that a party is lying to protect himself.

GEICO offers another reason to permit evidence of the arrests: a character witness may be cross-examined about his knowledge of the arrests to test the scope and reliability of their knowledge of Gonzalez and Seco's character. But Defendants say they are not calling any character witnesses at trial.

GEICO relies on another theory to justify its request to permit evidence of the arrests: it says the evidence is admissible under Federal Rule of Evidence 404(b)(2) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 5. GEICO argues that the evidence is probative of Gonzalez and Seco's "opportunity to participate in the underlying insurance fraud

4

schemes that GEICO alleges in the Amended Complaint, as well as to show Defendants' absence of mistake, i.e., their knowledge that their patient treatment protocols and subsequent billing to insurance companies, including GEICO, was fraudulent." *Id.* at 5.

GEICO's opposition response does not present a separate argument supporting the introduction of testimony from police officers or law enforcement agents who participated in the arrests (even though that is a category mentioned in Defendants' motion *in limine*).

Defendants point out that the arresting officers were not disclosed in Plaintiffs' Rule 26 disclosures. They also say that "the only avenue to elicit the arrests is by calling Defendants." [ECF No. 123, p. 3]. But that is far from clear. Indeed, anyone who was present at the arrests of Gonzalez and Dr. Seco could testify about the arrests (if such testimony were permitted). In addition, if Gonzalez or Dr. Seco discussed the arrests with anyone (other than their attorneys), then the party who participated in those discussions could testify about what a Defendant said (as an admission under Federal Rule of Evidence 801(d)(2)).

Plaintiffs have made no mention of any evidence acquired *during* the arrests which might be relevant and admissible. For example, if Gonzalez had been arrested in a clinic and sprinted to a computer in an effort to delete patient files from the computer database, then Plaintiffs would presumably want to introduce evidence of that conduct. Or if Dr. Seco had blurted out, during his arrest, "I'm surprised it took you so long to figure out

what was actually happening here and how much money these clinics were stealing," Plaintiffs would undoubtedly seek to introduce those statements. But, as noted, GEICO has not even hinted at the existence of such evidence, so the evidence at issue about the arrests is merely **the fact of** the arrests.

Defendants posit that allowing the jury to hear evidence that Gonzalez and Dr. Seco were arrested would be unduly prejudicial under Federal Rule of Evidence 403. They say Plaintiffs want to impermissibly cause the jury to infer from the arrests that Defendants "were telling half-truths in their disclosures in this case." *Id.* Plaintiffs disagree on the merits, of course, but they also argue that the motion is premature because a ruling now, before trial, would require the Court to balance the probative value of the evidence outside of the context in which it would be used at trial.

Medical Chart Review

Defendants contend that GEICO will elicit testimony that Dr. Nguyen and Dr. Blasini reviewed only five charts a month and did not know how many patients were being treated at Gonzalez's Medical. Defendants argue that GEICO's strategy is to have the jury infer (or to argue to it) that "it is impossible to see how a physician can 'systematically review' a clinic's billing without knowing whether the small sample of bills reviewed each month constitute any meaningful percentage of the clinic's billing." [ECF No. 108, p. 3].

Defendants' primary arguments are that this theory is unpled, and that Florida

6

law does not impose a certain percentage of patient charts which a clinic's medical director must review on a monthly basis. More specifically, Defendants argue that GEICO's Amended Complaint alleges that Dr. Blasini and Dr. Nugyen did not perform systematic reviews because Dr. Seco's clinical opinion on coding and necessity are misstatements of fact and they failed to correct it -- and, had they performed the reviews like they were supposed to, they would have stopped the activities. Therefore, Defendants say, this theory is the one GEICO advanced in its pleading -- "not that the number of reviews they performed is insufficient." *Id.* at 4-5.

GEICO contends that its Amended Complaint adequately asserted allegations about the inadequacy of the reviews.

Paragraph 81 of the Amended Complaint [ECF No. 61] alleges that Dr. Nguyen swore, in substance, "that during his once-a-month visit to Gonzalez's Medical he would review only a handful of patient charts, and that he had no idea whether the handful of patient charts he reviewed constituted any significant portion of the overall number of patients who were treated each month at Gonzalez's Medical."

Paragraph 82 of the Amended Complaint alleges that "[n]either Blasini nor Nguyen ever legitimately served as medical director at Gonzalez's Medical" and "never conducted systematic reviews of Gonzalez's Medical's billings to ensure that the billings were not fraudulent or unlawful."

**Analysis**

Motions *in limine* in essence seek a prophylactic against the introduction of damaging evidence that could "'irretrievably affect the fairness of the trial.'" *Benson v. Facemyer*, No. 1:13-cv-595, 2017 WL 1400558, at * 1 (N.D. Ga. April 19, 2017) (quoting *Soto v. Geico Indem. Co.*, No. 6:13-CV-181, 2014 WL 3644247 at * 1 (M.D. Fla. July 21, 2014)). Courts thus grant them "only if the evidence in question is clearly inadmissible." *Hamilton v. Lanier*, 464 F. Supp. 3d 1379, 1381 (S.D. Ga. 2020) (quoting *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40, 2007 WL 1752873, at *1 (M.D. Fla. Jun. 18, 2007)); *see also Benson*, 2017 WL 1400558, at *1; *Centre Hill Courts Condo. Ass'n., Inc.*, No. 19-cv-80111, 2020 WL 496065, at *1 (S.D. Fla. Jan. 30, 2020), (citing *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010)).

*In limine* rulings are "not binding on the trial judge, and the judge may always change his mind during the course of the trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

"When seeking to exclude evidence *in limine*, '[t]he movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground.'" *Guantanamera Cigars Co. v. SMCI Holding, Inc.*, No. 21-cv-21714, 2022 WL 2046884, at *1 (S.D. Fla. June 27, 2022) (citing *Gonzalez*, 718 F. Supp. 2d at 1345).

Plaintiffs' theory of relevance of the two arrests is limited, slight and unconvincing. First, it is far from clear that the arrests relate to the transactions at issue. Second, Plaintiffs

8

have not articulated any events occurring during the arrests which might be relevant. The mere fact that an arrest occurred simply means that an accusation has been made. Third, GEICO's theory, unproven as it may be, is that the arrest of Gonzalez and Dr. Seco are connected to *this* case, not *prior* arrests from other, unrelated cases. Therefore, Plaintiffs' argument that the arrests show motive and planning is illogical, as the arrests are not "other" acts -- they are the very acts at issue here, concerning the same transactions (under GEICO's theory).

Fourth, the scenario at issue here is not one involving a witness, such as a cooperating conspirator, who was arrested and is testifying favorably for the prosecutor in an attempt to curry favor and convince the prosecutor to not bring charges or to bring lesser charges. GEICO is not a criminal prosecutor. And Gonzalez and Dr. Seco are not witnesses; they are named party Defendants. What possible arrest-based motivation would they have to testify in favor of GEICO when the result would presumably be to provide testimony detrimental to themselves?

It is "perfectly clear that normally the mere existence of an arrest is not admissible to impeach the credibility of a witness." *United States v. Garcia*, 531 F.2d 1303, 1306 (5th Cir. 1976).[1] There is, of course, an exception to this general rule when a witness in a criminal case might view the pending criminal charge "like the Sword of Damocles" and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

9

be pressured to "color his testimony" because he is in a "compromising situation." *Id.* But that exception has absolutely no applicability here, as neither Gonzalez nor Dr. Seco are cooperating witnesses for law enforcement and they surely would not be motivated to testify against *themselves* in this civil case in order to please law enforcement officials and/or prosecutors on issues arising from the arrests. *Cf. United States v. Ramirez*, 622 F.2d 898, 899 (5th Cir. 1980) ("Although normally a witness may only be impeached by showing a prior **conviction**, the existence of an *arrest* or an indictment may be admissible to demonstrate an **informant's** potential for giving false testimony in order to protect himself." (emphasis added)).

At bottom, GEICO's relevance argument about the arrests is wholly unconvincing. Based on both Rule 403 and Rule 404(b), the Undersigned therefore grants Defendants' motion *in limine*. GEICO will not be permitted at trial to introduce evidence about, or to advance argument concerning, the arrests of Gonzalez and Dr. Seco. Likewise, Plaintiffs will not be able to elicit testimony from police officers, law enforcement agents and officials or witnesses who observed the arrests or heard comments about the arrests to testify about the arrests. *Jenkins v. Gen Motors Corp.*, 446 F.2d 377, 381 (5th Cir. 1971) (noting that "it is clear" in the "federal courts" that "it is improper for impeachment purposes to show the accusation, arrest, or indictment for a crime to use against a witness"). *Palmer v. Robbins*, No. CV419-167, 2022 WL 1063607, at *3 (S.D. Ga. Apr. 8, 2022) (granting motion *in limine* and excluding evidence of arrests under Rule 403 balancing

10

analysis, without considering if arrests were also inadmissible as impermissible other act evidence under Rule 404).

*Hypothetically*, this Order does not technically foreclose Plaintiffs from seeking to introduce testimony about *other* facts, if they exist, which might have arisen **during** the arrests (such as, to use a made-up hypothetical, a Defendant trying to flee or attempting to destroy evidence). But this possibility seems entirely academic and unrealistic, as GEICO has not even hinted about the existence of this type of evidence.

Concerning GEICO's theory about Dr. Blasini and Dr. Nguyen, Defendants' summary of the allegations concerning these two doctors is skewed and does not fairly detail the nuances of the allegations. Importantly, Defendants ignore the allegation that Dr. Nguyen swore that he reviewed only a handful of monthly charts and did not know if those charts were for a significant percentage of patients.

To be sure, a party's theory of the case at trial is, in general, limited to the party's pleadings. But the mere fact that the operative pleading did not specify with particularity the point that the reviewing doctor was unfamiliar with the number of patients being treated at the clinic does not render evidence on that point impermissible. *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1332 (11th Cir. 2016) (affirming judgment in insurer's favor in lawsuit alleging that doctor failed to systematically review billings).

*Vizcay's* analysis undermines Defendants' argument:

> The Clinic Act does not state exactly how thorough a medical director's systematic review must be, but this case does not require us to define the

> bare minimum of the statute's review requirements. Whatever that minimum is, the jury was presented with enough evidence to find that Dr. Vizcay did not come close to satisfying it. When asked about her review "system" at trial, Dr. Vizcay was unfamiliar with the number of patients being treated at her clinics and admitted that she did not have a methodology for ensuring that the clinics were properly coding medical services. Allstate's medical billing expert testified that the evidence of improper and abusive billing practices was so prevalent that it would have been readily apparent to someone conducting even a cursory review. Based on that evidence, the jury was well within bounds to find that Dr. Vizcay had failed to adequately review billings, systematically or otherwise.

*Id.* (emphasis supplied).

The Undersigned is not convinced that GEICO's Amended Complaint did not adequately allege a failure to systematically review the charts. Given that a motion *in limine* should be granted only if the evidence in question is "clearly inadmissible," *Hamilton*, 464 F. Supp. 3d at 1381, the Undersigned denies Defendants' motion concerning evidence of GEICO's systematic review theory. As noted, Judge Moreno is not bound by this ruling at trial.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on December 12, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record